IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 25CR50030 |
| | ) | |
| | ) | Judge Iain D. Johnston |
| | ) | |
| | ) | |
| FRANCISCO HERNANDEZ-RAMOS | ) | |

# DEFENDANT'S SENTENCING MEMORANDUM

Francisco Hernandez-Ramos, by his attorney Andrew Hemmer of the Federal Defender Program, hereby submits this sentencing memorandum requesting that the Court sentence him to 30 months' imprisonment, at the low end of the guidelines range.

## ARGUMENT

### I. Mr. Hernandez-Ramos agrees with the PSR's guidelines calculation and facts

First, the defense agrees with the PSR's guidelines calculation of 30 to 37 months, which is based on a total offense level of 17 and criminal history category of III, PSR ¶ 82, and agrees with the facts in the PSR. Mr. Hernandez-Ramos also agrees that no supervised release term should be imposed. PSR ¶ 88 (citing USSG § 5D1.1(c)).

### II. The § 3553 factors weigh in favor of a sentence of 30 months' imprisonment

Under 18 U.S.C. § 3553(a), the Court must impose a sentence that is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a)(2). The Court must also consider factors including the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the guidelines range; and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a). Here, the appropriate sentence under the § 3553(a) factors is 30 months' imprisonment.

This is not Mr. Hernandez-Ramos' first time around committing or being sentenced for an illegal entry or reentry offense, and it is not his second time. He's been removed from the country a number of times, and returned each time. He also was convicted of an extremely serious sex offense after his most recent reentry into the country. *See* PSR ¶ 36. He recognizes his continual violation of the immigration laws of the United States, and the fact he was convicted of a felony sex offense after his most recent reentry, warrant a significant punishment within the guidelines range in this case.

However, Mr. Hernandez-Ramos asks the Court to consider the following factors in imposing a sentence at the low end of the guideline range. First, his life in Mexico was marked by abject poverty, requiring him to begin working in the fields at 10 years old harvesting corn and peas, so that drove his motivation for entering the United States—to earn a better living to support his family, including his five daughters. Second, he has serious physical health problems which make his time in custody more difficult, and requires urgent heart surgery, which hopefully will be able to be done in custody but will be easier to recover from out of custody. Third, he has had perfect conduct in the Winnebago County Jail for the past nine months, and in the Illinois Department of Corrections for the previous five years or so. Finally, a sentence of 30 months will accomplish the goals of sentencing including because Mr. Hernandez-Ramos, as a noncitizen, will subject him to a comparatively longer and harder sentence than other inmates due to statutory and BOP considerations.

**A. Mr. Hernandez-Ramos grew up very poor, which drove his motivation to come to the United States to work and support his family (§ 3553(a)(1))**

Francisco was born in Mexico as one of six children. PSR ¶ 44. He grew up in Milpas Viejas, and was raised by his grandmother. He and his family were poor, and went hungry at times. PSR ¶ 45. Francisco began working in the fields at age 10, "by harvesting corn and peas."

PSR ¶ 46. He continued school until sixth grade but dropped out because he could not afford the tuition. PSR ¶ 46. He later came to the United States to work and support his family, and that was his motivation for entering the United States in the first place. He now has five daughters, including one he speaks to weekly, who all live in Mexico. PSR ¶ 52. He tried to provide a good living for them, but he understands he flagrantly violated the nation's immigration laws. He also understands that his repeated reentry into the country, and his conduct here after the most recent reentry, is aggravating and deserves a significant sentence. He simply requests that the Court sentence him to the low end of the guidelines range, which still represents a significant sentence that the Sentencing Commission believed was appropriate when promulgating the guidelines.

### B. Mr. Hernandez-Ramos has serious physical health conditions that need treatment, will make his time in custody more difficult, and will better recover out of custody (§ 3553(a)(1))

Another factor to consider is that Mr. Hernandez-Ramos has serious health problems now, which will make his time in custody harder but will hopefully be treated in custody, and would be easier to recover from out of custody, and a 30-month sentence would be an appropriate period of time for that. Mr. Hernandez-Ramos experienced dizziness, syncope, left facial droop, and left-sided weakness in September 2025 and was admitted to Decatur Memorial Hospital. PSR ¶ 61. He was diagnosed with right thalamic stroke, PFO (patent foramen ovale; a hole in the heart), and right thumb subluxation (partial joint dislocation). PSR ¶ 61. He needs a surgery of PFO closure, which the WCJ and the USMS are attempting to schedule. PSR ¶ 62.

These conditions are relevant for a couple reasons. First, they have made and will make his time in custody more difficult. And second, after he receives treatment for them it will be more comfortable on him to recover out of custody than in custody in less than comfortable conditions. The defense thus believes these conditions weigh in favor of a sentence lower within

the guidelines range.

**C. Mr. Hernandez-Ramos' conduct in custody at the WCJ and in IDOC was unblemished (§ 3553(a)(1))**

This factor can be discussed briefly. Mr. Hernandez-Ramos had zero disciplinary infractions in the WCJ from January 2026 to now, and had zero in IDOC custody from 2021 to 2026. PSR ¶¶ 8, 36. That weighs in favor of a low end of the guidelines sentence.

**D. A sentence of 30 months in the BOP will promote the goals of sentencing, including because Mr. Hernandez-Ramos' status as a noncitizen will mean he serves a longer portion of his sentence under worse conditions (§§ 3553(a)(2))**

A sentence of 30 months would also promote the goals of sentencing. *See* 18 U.S.C. § 3553(a)(2). This is especially the case for Mr. Hernandez-Ramos because of his status as a noncitizen. Because of that status, he will not be eligible for things like home detention, community confinement, work release, or intermittent incarceration near the end of his sentence, and he will, at least, be disqualified from placement at a minimum-security facility. *See United States v. Guzman*, 236 F.3d 830, 834 (7th Cir. 2001) (noting argument that "the status of being a deportable alien can affect the conditions of imprisonment, can make them harsher by disentitling a defendant to serve any part of his sentence in a halfway house, minimum security prison, or intensive confinement center … quite apart from the sequel of deportation[.]")

Mr. Hernandez-Ramos' lack of legal status also means he will likely not be eligible for First Step Act credits. *See* 18 U.S.C. § 3632(d)(4)(E) (inmate with final removal order ineligible). That means he will have to serve a greater proportion of his sentence than will most others. It is also unknown how long Mr. Hernandez-Ramos will spend in ICE custody pending his deportation following the service of his BOP sentence, which will further extend his actual time in custody. He may be placed in a comparatively worse privately-run prison at that time. *See* Emma Kaufman, *Segregation by Citizenship*, 132 Harv. L. Rev. 1379, 1381 (2019) (noting

these facilities have "unusually poor healthcare; overcrowding; higher rates of solitary confinement, lockdowns, and deaths in custody than comparable BOP institutions; and a dearth of rehabilitative programs such as drug treatment and education courses, which are offered in other federal prisons.")

All of that means that a 30-month sentence will provide just punishment, promote respect for the law, and afford deterrence to a greater degree based on the other consequences and penalties Mr. Hernandez-Ramos likely will face as a consequence of his immigration status.

**E. The sentence should, if either, be run concurrent with any possible sentence for the offense described in paragraph 84 of the PSR.**

As the probation office notes, the Court has discretion under USSG § 5G1.3 to run this sentence concurrently or consecutively with any "anticipated" state sentence. PSR ¶ 84. Under USSG § 5G1.3(c), if a "state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction" the instant sentence should be run concurrently to that sentence.

The probation office notes that Mr. Hernandez-Ramos is subject to a warrant that was issued in Beaufort County, South Carolina by the Beaufort County Sheriff's Department, for some of the same conduct related to his IDOC sentence in 2021. PSR ¶ 39. But there is no record of Mr. Hernandez-Ramos being charged in court with that offense. PSR ¶ 39. Because it is not known if it ever will be charged (especially considering his sentence for the same conduct in 2021 and his now-imposed sentence in this federal case), the defense is not sure it is fair to say a sentence is "anticipated" for the offense in the way USSG § 5G1.3 means it, and so it is not clear that the Court should order this sentence to be concurrent or consecutive to any sentence in that situation. If either, though, the defense requests that the Court run it concurrent, because although the conduct underlying that warrant is not technically "relevant conduct" under §

1B1.3, such that § 5G1.3 would apply, it is practically related in that it is some of the same conduct for which Mr. Hernandez-Ramos was sentenced in case number 21CF265, and for which his guidelines were increased under § 2L1.2(b)(3)(B). *See* PSR ¶¶ 22, 36.

### F. Mr. Hernandez-Ramos requests a recommendation to a facility that is able to treat his medical conditions effectively.

Finally, Mr. Hernandez-Ramos respectfully requests that the Court recommend a placement in a facility able to treat his serious physical health conditions. *See* PSR ¶¶ 61–62.

## CONCLUSION

For the reasons stated above, Mr. Hernandez-Ramos respectfully requests that the Court impose a sentence of 30 months' imprisonment.

Respectfully submitted:
FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: /s/Andrew Hemmer
Andrew Hemmer
Attorney for Mr. Hernandez-Ramos

ANDREW HEMMER
FEDERAL DEFENDER PROGRAM
401 W. State Street - Suite 800
Rockford, IL 61101
(815) 961-0800